UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

MARIE IDDRISS,

                 Plaintiff,

       -v-

HONG DIEP REALTY INC. ET AL.,

               Defendants.

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/17/2026

25-cv-2799 (LJL)

ORDER

**LEWIS J. LIMAN, United States District Judge:**

On the morning of November 21, 2023, Plaintiff Marie Iddriss ("Plaintiff") fell down a flight of stairs in a building located at 123 West 20th Street in Manhattan after she exited the elevator on the second floor. Hong Diep Realty Incorporated ("Hong Diep") was the landlord of the building with contractual responsibility for repairs in common areas and Kids At Work ("KAW") was a tenant of space on the second floor. Plaintiff claims that Hong Diep and KAW are responsible in negligence for her injuries. In particular, she claims that Defendants failed to maintain handrails on the stairs which could have broken, and thereby prevented, her fall. The trial of this personal injury case is scheduled for February 23, 2026. Plaintiff and Hong Diep have each made motions in limine.

"The purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)). The decision whether to grant an *in*

*limine* motion "resides in a district court's inherent and discretionary 'authority to manage the course of its trials.'" *United States v. Ray*, 2022 WL 558146, at \*1 (S.D.N.Y. Feb. 24, 2022) (quoting *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008)). "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006). "Because a ruling on a motion *in limine* is 'subject to change as the case unfolds,' this ruling constitutes a preliminary determination in preparation for trial." *United States v. Perez*, 2011 WL 1431985, at \*1 (S.D.N.Y. Apr. 12, 2011) (quoting *Palmieri*, 88 F.3d at 139).

### A.  Plaintiff's Motion In Limine Is Denied

Plaintiff moves, in limine, for an order precluding Defense counsel from referring in opening statements to causation regarding the presence or the absence of a handrail for the subject staircase.  Plaintiff testified that she fell because of the absence of a handrail.  Plaintiff's liability expert has opined that the absence of a handrail was in violation of the Building Code of New York City and a contributory factor to Plaintiff's fall and injury.  The motion is denied. The opening statement is the vehicle for the jury to understand anticipated evidence.  *See United States v. Garcia*, 413 F.3d 201, 214 (2d Cir. 2005).  Defendant is entitled to dispute causation and to present their position regarding causation.  Thus, Plaintiff has not shown that the evidence is "clearly inadmissible on all potential grounds." *Ozsusamlar*, 428 F. Supp. 2d at 164.

### B.  Hong Diep's Motions In Limine Are Granted

Hong Diep moves in limine to (i) preclude any argument by Plaintiff's counsel suggesting an amount for pain and suffering; (ii) preclude expert testimony from Plaintiff's expert regarding the mechanism of Plaintiff's fall and any speculative opinions concerning the elevator/stairwell layout; and (iii) precluding any evidence or argument concerning Plaintiff's

future medical expenses.

### 1. Suggestion of Specific Damages Amount for Pain and Suffering

The Second Circuit has held that it is left to the discretion of the trial judge to determine whether to allow a plaintiff to request a specific amount of damages for pain and suffering from the jury. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). The court may "either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." *Id.* Although the Circuit has stopped short of adopting a *per se* rule, it has expressed concern that the specification of a target amount for a jury to award could prejudicially "anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence" and could suggest that the proposal "is backed by some authority or legal precedent." *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *as amended* (Dec. 22, 1995), *vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996). The Second Circuit thus has "disfavored" the practice of counsel suggesting a target amount for pain and suffering damages. *Id.* There is a "danger that a jury will give undue weight to the figures advanced by counsel." *Mileski v. Long Island R.R.*, 499 F.2d 1169, 1174 (2d Cir. 1974).

Plaintiff argues that, because this is a diversity case where the jury will apply the substantive law of New York, counsel should be permitted to make the suggestions to the jury that New York law would permit a lawyer in New York State court to be made to a jury sitting there. CPLR § 4016(b) provides in pertinent part that "[i]n any action to recover damages for personal injuries or wrongful death, the attorney for a party shall be permitted to make reference, during closing statement, to a specific dollar amount that the attorney believes to be appropriate compensation for any element of damage that is sought to be recovered." CPLR 4016(b). The Court has previously rejected this argument. The determination whether to permit counsel to

3

request a specific dollar amount from the jury raises a question of procedure governed by federal law.  *See Marshall v. Port Auth. of New York & New Jersey*, 2022 WL 17491006, at *5 (S.D.N.Y. Dec. 5, 2022); *Rodriguez v. Senor Frog's de law Isla, Inc.*, 642 F.3d 28, 37 n.3 (1st Cir. 2011) (stating that this is a matter of procedure governed by federal law and describing the differences among Circuits).  *Consorti* itself was a diversity case.  72 F.3d at 1011.

The Court is persuaded by that a suggested value would prejudice the jury, and so exercises its discretion against Plaintiff offering a specific amount of damages for pain and suffering.  The jury, confronted with a notoriously difficult figure to calculate, would invariably believe that the figure suggested by counsel was backed by experience or authority.  Accordingly, the motion is granted and Plaintiff shall not suggest a figure to the jury for pain and suffering.  *See D.R. by Rodriguez v. Santos Bakery, Inc.*, 675 F. Supp. 3d 355, 361 (S.D.N.Y. 2023); *Rahman v. Lee*, 2024 WL 4043697, at *6 (S.D.N.Y. Sept. 4, 2024) (pursuant to the Second Circuit's decision in *Consorti*, "it has become the routine practice of courts within the Second Circuit to 'grant[] motions to preclude plaintiffs from requesting a specific dollar amount from the jury' without any 'specific reason to contravene' the policy." (quoting *Nunez v. Diedrick*, 2017 WL 4350572, at *2 (S.D.N.Y. June 12, 2017)).

### 2.  Expert Testimony

Plaintiff expects to call Douglas W. Peden as an expert at trial.  Mr. Peden is a registered architect.  Dkt. No. 81-1 at 2.  He holds himself out as providing expert analysis of contractual and construction material defects, walkway construction, vertical misalignments, maintenance and safety, identification and delineation of hazards in stairs, ramps, corridors, platforms and level changes both outdoors and inside buildings and other structures.  *Id.*  Among other things, he has training and experience in the analysis and testimony for failure analysis and towards the

resolution of personal injury litigation involving trip and fall injuries and code compliance issues. *Id.*

Peden reviewed Plaintiff's deposition and that of the principals of Hong Diep and KAW. Dkt. No. 81-1 at 3; Dkt. No. 81-2. He also conducted a site examination and viewed a video of the scene. Dkt No. 81-2 at 3. He will testify about his observations of the stair landing and the stairwell, the Building Code requirements that there be handrails along stars as a safeguard to prevent people from falling off elevated surfaces, and that the failure to maintain handrails was a building code violation and a violation of the New York State Multiple Dwelling Law. Dkt. Nos. 81-1, 81-2. He will testify that the unprotected stair landing was unreasonably dangerous and that the failure to provide required handrails on the stair violated the standard of care and applicable building codes. Dkt. No. 81-1 at 12. He will further testify that the second floor landing is in conflict with the stair landing. Dkt. No. 81-2 at 2. Finally, Plaintiff proposes to have Peden testify that "[t]he unprotected stair landing . . . caused [Plaintiff] to fall off and be injured" and that "[t]he lack of a handrail . . . contributed to [Plaintiff's] injury," Dkt. No. 81-1 at 12; *see also id.* at 6 (same), and that "[t]he second floor landing is in conflict with the stair landing and may have contributed to [Plaintiff's] fall," Dkt. No. 81-2 at 2.

Hong Diep moves to preclude Plaintiff from offering Peden's testimony "about the mechanism of Plaintiff's fall and whether a handrail would have prevented it." Dkt. No. 81 at 5. It claims that those opinions implicate issues of biomechanics and causation, outside of Peden's expertise, are not supported by a reliable methodology, and would mislead the jury and therefore not be helpful to it. *Id.* As to the testimony regarding the stair landing, Hong Diep argues that "[w]hether a condition contributed to Plaintiff's fall requires analysis of how Plaintiff moved, perceived the areas, and lost balance, which are all issues involving biomechanics." *Id.* at 6.

5

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Jones*, 965 F.3d 149, 161 (2d Cir. 2020) (quoting *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)); *see also Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Thus, the proponent must establish, and the trial judge must find "that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).  This "gatekeeping obligation" applies "to all expert testimony."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

"The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony.  It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* at 152. Courts are to adhere to a "liberal standard of admissibility for expert opinions," *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005), and begin with "a presumption that expert evidence is admissible," *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110, 115 (S.D.N.Y. 2015) (citing *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995)).  "'[T]he inquiry envisioned by Rule 702 is a flexible one'" and "many factors 'will bear on the inquiry' of whether Rule 702 is

satisfied." *Jones*, 965 F.3d at 161 (quoting *Daubert*, 509 U.S. at 593–94) (alteration omitted).

Not every expert admissible under Daubert need rely on a method that conforms with "the exactness of hard science methodologies." *E.E.O.C. v. Bloomberg, L.P.*, 2010 WL 3466370, at *13–14 (S.D.N.Y. Aug. 31, 2010) (quoting *United States v. Simmons*, 470 F.3d 1115, 1123 (5th Cir. 2006)).  However, a court still must determine that the evidence is "sufficiently reliable so as to be admissible," *Amorgianos v. Amtrak*, 303 F.3d 256, 268 (2d Cir. 2002), and "it is critical that an expert's analysis be reliable at every step," *id.* at 267.  "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* at 267.  Even "[i]f the witness is relying solely or primarily on experience," rather than formal training, "[he still] must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Alto v. Sun Pharmaceutical Industries, Inc.*, 2021 WL 4803582, at *2 (S.D.N.Y. Oct. 13, 2021) (internal quotation marks omitted) (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, LLC, 691 F. Supp. 2d 448, 473 n.148 (S.D.N.Y. 2010)).  "In short, the district court must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Amorgianos*, 303 F.3d at 265–66 (quoting *Kumho Tire*, 526 U.S. at 152).

Hong Diep's motion is granted.  Plaintiff admits that Peden cannot offer evidence regarding "the force of Plaintiff's fall, her body position at the time of her fall and/or the impact the absence of handrails had on Plaintiff's body/injuries." Dkt. No. 84 at 3.  She offers no

7

evidence of Peden's qualifications to speak to the mechanism of injury in Plaintiff's case. Rather, she relies entirely on the district court opinion in *Bennett v. Target Corp.*, 2018 WL 5784354 (E.D.N.Y. Nov. 5, 2018).  In that slip-and-fall case, the court permitted an architect to testify to whether the defendant's design of its display platform was negligent or defective and "what design-related decisions could have prevented or minimized Plaintiff's injuries," but it reserved decision on the question whether the expert could opinion on "the specific cause of [the plaintiff's] injuries." *Id.* at *6.  In line with the decision in *Bennett*, Peden will be able to testify regarding the function of handrails along stairs in preventing people from falling off elevated surfaces, preventing people from falling over the edge of a landing, and providing a point of anchorage.  Dkt. No. 81-1 at 7-8.  Those opinions fall within Peden's area of expertise.  He can also testify that a handrail would provide a person who was falling off the second floor landing and into the stair case "with an opportunity to arrest her fall and injury." *Id.* at 8.  That general testimony too falls within Peden's expertise and is supported by a reliable methodology. However, he does not have the expertise to opine on what caused Plaintiff's injury or what would have prevented her injury in particular and he does not point to a methodology that would support those opinions, he may not testify to Plaintiff's particular mechanism of injury.

### 3.  Preclusion of Evidence and Argument Regarding Future Medical Expenses

Defendant seeks to preclude Plaintiff from offering evidence of future medical expenses for failure to comply with the initial disclosure requirements of Federal Rule of Civil Procedure 26.  Dkt. No. 81 at 8-9.  Defendant also suggests that Plaintiff cannot offer evidence from which a jury could find future medical expenses with reasonable certainty from competent medical and economic evidence.

Plaintiff has produced an expert report of Dr. Bradley Wasserman who examined Plaintiff and reviewed her medical records.  Dkt. No. 81-3.  Dr. Wasserman opines that

Plaintiff's left knee injury was causally related to the accident.[1]  *Id.* at 3.  He also opines that the medical treatment she received for the injury was related and necessary.  *Id.*  Finally, he adds: "She may benefit from additional treatment in the future, including but not limited to, additional physical therapy, injections and a total knee replacement."  *Id.*  The report is dated December 11, 2025.  *Id.*  Plaintiff has not produced cost estimates, treatment plans, or other documentation supporting a claim for future medical expenses.

Rule 26(a)(1)(A)(iii) requires the disclosing party to provide "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Under Rule 26(e)(1), a party who becomes aware that a disclosure is "incomplete or incorrect" has a duty to supplement "in a timely manner."  Fed. R. Civ. P. 26(e)(1)(A); *see also Pilitz v. Inc. Vill. of Freeport*, 2020 WL 6945927, at *2–4 (E.D.N.Y. Nov. 25, 2020) (setting forth the standard and determining that preclusion of compensatory damages was warranted); *Max Impact, LLC v. Sherwood Grp., Inc.*, 2014 WL 902649, at *5–8 (S.D.N.Y. Mar. 7, 2014) (finding that noncompliance with Rule 26 was harmless for the purposes of lost profits damages).  The rule does not impose an outer time limit for a supplemental disclosure as long as the supplement is made "in a timely manner," Fed. R. Civ. P. 26(e), "so as to avoid prejudicing adverse parties," *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 161 (S.D.N.Y. 2012).  The purpose of the Rule is to is to avoid "surprise" or "trial by ambush."  *Am. Stock Exch., LLC v.*

---

[1] Dr. Wasserman's report states that the injury is related to Plaintiff's accident on December 14, 2018.  Dkt. No. 81-2.  The Court assumes that that is a typographic error.  The report indicates that Dr. Wasserman was retained to conduct an orthopedic evaluation of Plaintiff regarding a left knee injury from a fall accident on November 21, 2023.  *Id.* at 1.

*Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (internal quotation marks omitted) (citing *Transclean Corp. v. Bridgewood Servs., Inc.*, 77 F. Supp. 2d 1045, 1061 (D. Minn. 1999)); *see also Haas v. Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (summary order) ("'The purpose of the rule is to prevent the practice of "sandbagging" an opposing party with new evidence.'") (quoting *Ebewo v. Martinez,* 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)).

Federal Rule of Civil Procedure 37(c)(1) authorizes the Court to impose sanctions for failure to disclose information under Rule 26(a)(1). "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at trial, unless the failure was substantially justified or is harmless . . ." Fed. R. Civ. P. 37(c)(1); *Lore v. City of Syracuse*, 2005 WL 3095506, at *3 (N.D.N.Y. Nov. 17, 2005). Failure to comply with Rule 26(a)(1) is punishable with sanctions, which are evaluated under the standards set out by the Second Circuit in *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955 (2d Cir. 1997). *See Design Strategy, Inc. v. Davis* 469 F.3d 284, 296 (2d Cir. 2006). That is, the district court has "broad discretion" to determine the nature of sanctions that should be imposed for a violation of Rule 26(a)(1). *Cates v. Trustees of Columbia Univ.*, 330 F.R.D. 369, 373 (S.D.N.Y. 2019). Those sanctions include preclusion of evidence and prohibiting the disobedient party from supporting designated claims or defenses. Preclusion of evidence, however, is a harsh remedy that should be imposed only in rare situations. *Id.* In determining whether preclusion or another sanction would be appropriate, courts consider: (1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Id.* (citing *Softel*, 118 F.3d at 961).

There is no dispute that Plaintiff failed to comply with Rule 26(a)(1).  Nor does Plaintiff offer a satisfactory explanation for that failure.  Her counsel states that "Plaintiff erroneously overlooked service of a supplemental Rule 26 disclosure."  Dkt. No. 84 at 7.  Although Rule 26(e) excuses a party from making a supplemental disclosure when the "additional or corrective information" has been "made known to the other parties during the discovery process or in writing," Plaintiff cannot avail herself of that provision.  Dr. Wasserman's report would not put Defendant on notice that Plaintiff was intending to seek an award from the jury for future medical care and expenses.  The prejudice to Defendant from permitting Plaintiff to seek damages for future medical expenses would be immense.  Plaintiff states that she intends to elicit from Dr. Wasserman "the present cost of physical therapy, injections, and a total knee replacement," Dkt. No. 84 at 7, but that information was posed as entirely speculative in the report.  *See id.* ("She may benefit from additional treatment in the future, including, but not limited to, additional physical therapy, injection, and a total knee replacement.").  Because that statement was both speculative and uncertain, and did not put Defendant on notice, Defendant has not been able to examine Dr. Wasserman on it.  Plaintiff notes that she provided authorizations for her doctors in July 2025, Dkt. No. 84-1, but there would have been no reason for Defendant to have sought discovery with respect to future medical expenses because Plaintiff had not indicated in initial disclosures that she was seeking such damages.  It is true too that the Complaint seeks "past and future medical expenses," Dkt. No. 1. at 5, but as explained following the close of discovery Plaintiff made no disclosures that would indicate they were pursuing that theory of damages at trial.

A continuance is not appropriate either.  "Case law has recognized that where a party has had 'ample time to disclose [the pertinent information]' and provides no explanation for its

failure to do so, a continuance is not warranted." *Lebada v. New York City Dep't of Educ.*, 2016 WL 2627614, at *6 (S.D.N.Y. Feb. 8, 2016) (quoting *Preuss v. Kolmar Labs., Inc.*, 970 F. Supp. 2d 171, 179 (S.D.N.Y. 2013). "[T]he fact that discovery closed many months ago 'also weighs against the possibility of a continuance.'" *Id.* (quoting *Spontana, Inc. v. Am. Talent Agency, Inc.*, 2010 WL 3341837, at *2 (S.D.N.Y. Aug. 17, 2010)).  Additionally, trial has been set for February 23, 2026 since the Court entered a case management plan on July 8, 2025.  Dkt. No. 42. *See Wolak v. Spucci*, 217 F.3d 157, 161 (2d Cir. 2000) "a continuance would have to come at the expense of trial efficiency.")  Nor has Plaintiff sought a continuance.  *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) ("there is no indication that he requested a continuance at that time.")

Finally, the future medical expenses to which Plaintiff seeks to introduce evidence are extraordinarily speculative.  *See* Dkt. No. 81-3 at 3 (Plaintiff "may benefit," "in the future" from certain treatments "including, but not limited to, additional physical therapy, injections, and a total knee replacement.")[2]  "Under New York law, it is well established that economic damages (such as future medical expenses) must be established with 'reasonable certainty.'" *Rivera v. Home Depot USA Inc.*, 2018 WL 1635026, at *3 (S.D.N.Y. Apr. 3, 2018).  "Pursuant to this standard, 'an award of future medical expenses may not be based upon mere speculation.'" *Id.* (quoting *Faas v. State*, 672 N.Y.S.2d 145, 147 (3d Dep't 1998)); *see Bauta v. Greyhound Lines, Inc.*, 2019 WL 8060183, at *3 (E.D.N.Y. Jan. 4, 2019).  The Court would be required to permit the reopening of discovery into whether Plaintiff really would need future treatment, what that future treatment would look like, and how much it would cost.  On the basis of such a

---

[2] It also arguably goes beyond the scope of what would be permitted of a treating physician's testimony, and would not be admissible under the *Daubert* standard explained *infra*.  *See Abreu Bautista v. Pagan-Rodriguez*, 2025 WL 1730213, at *3 (S.D.N.Y. June 23, 2025).

speculative assertion, and considering both the time and expense that reopening discovery would require, the Court declines to do so.  *See Pal v. New York Univ.*, 2008 WL 26276614, at *4 (S.D.N.Y. June 30, 2008); *Fredricks v. Borden*, 2024 WL 4534079, at *15 (N.D.N.Y. Oct. 21, 2024).

Balancing these factors, the Court finds that precluding Plaintiff from offering evidence regarding future medical expenses is warranted.  *See Pal*, 2008 WL 26276614, at *6.

The Clerk of Court is respectfully requested to close Dkt. Nos. 78, 81.


SO ORDERED.

Dated: February 17, 2026
New York, New York
_____
LEWIS J. LIMAN
United States District Judge

13